MICHAEL DOLAN, Appellant and Respondent, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant and Respondent.

Disbursing officers charged with the duty of paying official salaries have, in the discharge of that duty, a right to rely upon the apparent title of an officer *de facto*, and to treat him as an officer *de jure* without inquiring whether another has the better right.

On the 31st of December, 1872, plaintiff, who was the assistant clerk of the Sixth District Court of the city of New York, was unlawfully

excluded from that office by K., who, claiming under an appointment of a justice of that court, entered upon and continued to occupy the office until March 1, 1874, when, by virtue of a judgment of ouster in an action of *quo warranto*, plaintiff again came into possession. The salary of the office was by statute required to be paid by the comptroller of the city in monthly installments. It was paid to K. from the time of his intrusion to December 1, 1873. Plaintiff, during the time he was excluded, was ready to perform the duties of the office and proffered his services to the clerk, which were refused. In an action to recover the salary, *held*, that plaintiff was not entitled to recover the salary for the period during which it was paid to K.; that defendant was in no way a party to the usurpation or responsible for the unlawful exercise of the power of appointment by the justice; that such appointment, although unauthorized, when joined with the possession of the office, constituted K. an officer *de facto;* that, while as an officer *de facto* only, he was not entitled to the salary and could not have maintained an action to recover it, yet payment to him while in possession was a good defence, the comptroller being justified in acting upon the apparent title; and that plaintiff's remedy was by action against the usurper. But, *held*, that plaintiff was entitled to recover the unpaid salary, he having the right to the services of K. as having been rendered for him.

(Argued December 15, 1877; decided January 30, 1877.)

THESE were cross appeals from a judgment of the General Term of the Supreme Court in the first judicial department affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 8 Hun, 440.)

The facts are sufficiently stated in the opinion.

*Nelson J. Waterbury* for the plaintiff. A *de jure* officer has the sole right to the salary of his office, and may recover the same from the public treasury, although it has been paid to an intruder. (*People* v. *Nostrand*, 46 N. Y., 375, 382; *People* v. *Tieman*, 8 Abb. Pr., 35, 361; *Mayor* v. *Flagg*, 6 id., 296, 302; *Carroll* v. *Siebenthaler*, 37 Cal., 193; *Pearce* v. *Hawkins*, 2 Swan, 87; *Patterson* v. *Miller*, 2 Metc., 493; *Riddle* v. *County of Bedford*, 7 S. & R., 392; *Rounds* v. *Bangor*, 46 Me., 541; *People* v. *Hopson*, 1 Den., 574; *Green* v. *Burke*, 23 Wend., 490; *Conner* v. *Mayor, etc.*, 1 Seld., 285; *People* v. *Brennan*, 30 How. Pr., 417; 45 Barb., 457;

1 Abb. [N. S.], 184; *Smith* v. *Mayor, etc.*, 37 N. Y., 518; *McNany* v. *Mayor, etc.*, 1 Hun, 35.) An officer *de facto* who has received the salary of an office is liable to the officer *de jure* in an action to recover the same. (*Glascock* v. *Lyons*, 20 Ind., 1.) The unpaid salary of an office is as much property as any other credit. (*People* v. *Warner*, 7 Hill, 81; 2 Den., 272; *Conner* v. *Mayor*, 1 Seld., 285; *Smith* v. *Mayor*, 37 N. Y., 518; *U. S.* v. *Addison*, 22 How., 174; 6 Wal., 291.) Payment to another, even if he were a *de facto* officer, is no defence to an action by the officer *de jure* for his salary. (*People* v. *Collins*, 7 J. R., 549; *Hull* v. *Luther*, 13 Wend., 491; *Mayor* v. *Flagg*, 6 Abb. Pr., 296, 303; *Dorsey* v. *Smith*, 28 Cal., 21; *Stratton* v. *Oulton*, id., 44; *Suprs.* v. *Benoit*, 20 Mich., 176; *Stadler* v. *City of Detroit*, 13 id., 346; *Allen* v. *McKeen*, 1 Sumn., 276.)

*D. J. Dean* for the defendant. In order to entitle plaintiff to recover from the public treasury the salary claimed, he must show that he was entitled to the office and actually occupied it during the period for which he claims salary. (*People* v. *Nostrand*, 46 N. Y., 375; *Dart. Col.* v. *Woodward*, 4 Wheat., 627; *People* v. *Warner*, 7 Hill, 8; 2 Den., 272; *McNany* v. *Mayor*, 1 Hun, 35; *Smith* v. *Mayor*, 37 N. Y., 518; 1 Daly, 219; *Segar* v. *Crenshaw*, 10 La. An., 298; *Pettit* v. *Rosseau*, 15 id., 239; *Benoit* v. *Auditors, etc.*, 20 Mich., 176; 4 Ops. Attorney-General, 123.) The wrong-doer who has excluded the *de jure* officer is liable to compensate him for the injury sustained thereby. (*Glascock* v. *Lyon*, 20 Ind., 1.)

ANDREWS, J. The plaintiff on the 24th of May, 1872, was duly appointed assistant clerk of the District Court for the sixth judicial district in the city of New York, by the justice of that district, pursuant to the provisions of chapter 438 of the laws of 1872.

He thereupon duly qualified and took possession of the office, and held it until the 1st of January, 1873, on which

day one Keating, claiming the office by virtue of an appointment made by the justice on the 31st of December, 1872, entered upon and continued to occupy the office until March 1, 1874, and excluded the plaintiff therefrom. On that day the plaintiff again came into possession of the office by virtue of a judgment of *ouster* obtained by him against Keating in an action of *quo warranto*. The judgment in that action proceeded upon the ground that by the true construction of the act of 1872 assistant clerks were entitled to hold their offices for a fixed term, and were not removable at the pleasure of the justices, and that the plaintiff's term of office had not expired at the time of Keating's appointment, but continued until a period subsequent to the judgment of *ouster*. The justice in removing the plaintiff and appointing Keating, acted upon the assumption that the tenure of office of assistant clerk was at the pleasure of the appointing power. This court in *The People* v. *Flynn* (62 N. Y., 376), where the same question arose between different parties, affirmed the construction of the act of 1872, adjudged by the Supreme Court in the action of *quo warranto*.

By the act of 1872 the salary of assistant clerks was fixed at $3,000 a year, and the comptroller of the city of New York was directed to pay it in monthly installments out of the city treasury. The salary was paid to Keating from the 1st of January, 1873, to the 1st of December, 1873. The salary for December, 1873, and January and February, 1874, has not been paid to any person. The plaintiff, during the time he was excluded from the office, was ready to perform the duties, and proffered his services to the clerk, which were refused.

This action was brought, after the judgment in the *quo warranto* was rendered, to recover the salary of the office from January 1, 1873, to March 1, 1874. The court, on the trial, held that the plaintiff was not entitled to recover the salary prior to December 1, 1873, but that he was entitled to the salary from that time, and directed a verdict for the plaintiff for the amount of the salary for the three months preced-

ing March 1, 1874. Both parties appealed to the General Term from the judgment entered upon the verdict. The General Term affirmed the judgment, and from the judgment of affirmance both parties have appealed to this court.

The question is, was the plaintiff entitled to recover the salary appurtenant to the office of assistant clerk, during the whole or any part of the term in which he was excluded from the possession of the office by Keating, acting under the illegal appointment of December 31, 1872 ?

That the plaintiff was the *de jure* officer, and that Keating usurped and unlawfully excluded the plaintiff from the office is no longer an open question. The case of *The People* v. *Flynn* is decisive in favor of the plaintiff's title, and the judgment in the *quo warranto* conclusively establishes that he was deprived of the possession by the unlawful act and usurpation of Keating. To this usurpation and wrong the defendants were not parties. The power of appointment was not vested in the corporate body, or in any of its officers. For the unlawful exercise of the power of appointment by the justice, the defendants were in no way responsible. Keating's appointment, although unauthorized and illegal, nevertheless, when joined with the possession of the office, constituted him an officer *de facto*. The office of assistant clerk was a legal office ; the power of appointment was vested in the district justice, limited, however, in respect to the time when it might be exercised. In appointing Keating, the justice transgressed this limitation and exceeded his power. But the fact that an appointment to a public office was illegally made, does not *ipso facto* deprive the person appointed of the character of a *de facto* officer. In *Wilcox* v. *Smith* (5 Wend., 234), the general proposition is asserted that an individual coming into office by color of an election or appointment, is an officer *de facto*, although his election or appointment was illegal. And in *Parker* v. *Baker* (8 Paige, 428) the chancellor refused to inquire into the legality of the appointment of a commissioner of deeds, by the governor and senate, when the question arose collaterally, on the ground that he was by

virtue of the appointment, and the discharge of the duties of the office, an officer *de facto*. (See, also, 2 Kent, 295 ; *People* v. *Collins*, 7 J. R., 549 ; *People* v. *Dean*, 3 Wend., 438 ; *People* v. *White*, 24 id., 540 ; *Morris* v. *People*, 3 Den., 381.)

The appointment of Keating was not a plain usurpation without legal pretext or color of right. The statute was obscure ; the power of the justice to remove an incumbent at pleasure and make a new appointment, was a question upon which the courts differed, and although it has been finally decided that it did not exist, Keating was an officer *de facto* within the authorities. But being an officer *de facto* only, Keating could not maintain an action against the defendant for the salary. It is the settled doctrine in this State, that the right to the salary and emoluments of a public office, attach to the true and not to the mere colorable title, and in an action brought by a person claiming to be a public officer for the fees or compensation given by law, his title to the office is in issue, and if that is defective and another has the real right, although not in possession, the plaintiff cannot recover. Actual incumbency merely gives no right to the salary or compensation. (*People* v. *Hopson*, 1 Den., 579 ; *People* v. *Van Nostrand*, 46 N. Y., 382 ; *People* v. *Tieman*, 30 Barb., 193 ; *Mayor, etc.*, v. *Flagg*, 6 Abb. Pr., 296 ; see, also, *Lightly* v. *Clooston*, 1 Taunt., 112 ; *Prescott* v. *Hayes*, 42 N. H., 56 ; *Riddle* v. *Co. of Bedford*, 7 S. & R., 392.) The right of the intruder to recover is denied, not upon the ground of actual fraud on his part, for it often happens that he is in not only under a claim of right, but under a *prima facie* title, which he cannot or may not know to be invalid ; nor upon the ground that he is a mere volunteer, and that the government should not be obliged to pay him for his services, for in most cases they are rendered in good faith, and under the expectation, both on his part and on the part of the public, that he is to receive the emoluments of the office. The principle is, that the right follows the true title, and the courts will not aid the intruder by permitting him to recover the compensation which rightfully belongs to another.

That an officer merely *de facto*, has no right to the compensation of the office, also clearly appears from the consideration that if he obtains it he is liable on an action for money had and received by the officer *de jure* to recover it. (*Harwood* v. *Wood*, 2 Lev., 245 ; *Glosbeck* v. *Lyons*, 20 Ind., 1.)

But it does not follow from the conclusion that the defendant could have successfully defended an action brought by Keating to recover the salary of assistant clerk, that it was not justified in treating him as an officer *de jure* when claiming it, and paying it upon that assumption. It is clear that if the city could rightfully pay the salary to Keating during his actual incumbency, and has paid it, it cannot be required to pay it again to the plaintiff. We are of opinion that payment to a *de facto* public officer of the salary of the office, made while he is in possession, is a good defence to an action brought by the *de jure* officer to recover the same salary after he has acquired or regained possession. The expense of supporting the district courts is made a charge upon the city of New York. The act of 1872, as we have seen, directs the comptroller of the city to pay the salaries of assistant clerks out of the city treasury. It is a common provision in statutes relating to State, county and municipal officers, to impose upon the fiscal officer of the State, county or municipality the duty of paying official salaries out of the public money in his hands. For example, the salaries of State officers are to be paid by the State treasurer upon the warrant of the comptroller. (1 Rev. Stat., 177, § 7 ; id., 190, § 5.) And the act fixing the salaries of county judges and surrogates directs that they shall be paid quarterly by the county treasurers of the respective counties. (Laws of 1872, chap. 767, § 4.)

It is plain that in many cases the duty imposed upon the fiscal officers of the State, counties or cities to pay official salaries, could not be safely performed unless they are justified in acting upon the apparent title of claimants. The certificate of boards of canvassers certifying the election of a person to an elective office, is *prima*

*facie* evidence of the title of the person whose election is certified. But it often happens that, by reason of irregularities in conducting the election, or the admission of disqualified voters, the apparent title is overthrown and another person is adjudged to be rightfully entitled to the office. But this can seldom, if ever, be ascertained, except after a judicial inquiry; and in case of an appointed officer, the validity of the appointment often depends upon complicated questions of law or fact. If fiscal officers, upon whom the duty is imposed to pay official salaries, are only justified in paying them to the officer *de jure,* they must act at the peril of being held accountable in case it turns out that the *de facto* officer has not the true title; or, if they are not made responsible, the department of the government they represent is exposed to the danger of being compelled to pay the salary a second time. It would be unreasonable, we think, to require them, before making payment, to go behind the commission and investigate and ascertain the real right and title. This, in many cases, as we have said, would be impracticable. Disbursing officers, charged with the payment of salaries, have, we think, a right to rely upon the apparent title, and treat the officer who is clothed with it as the officer *de jure,* without inquiring whether another has the better right.

Public policy accords with this view. Public offices are created in the interest and for the benefit of the public; such, at least, is the theory upon which statutes creating them are enacted and justified. Public and individual rights are, to a great extent, protected and enforced through official agencies, and the State and individual citizens are interested in having official functions regularly and continuously discharged. The services of persons clothed with an official character are constantly needed. They are called upon to execute the process of the courts and to perform a great variety of acts affecting the public and individuals. It is important that the public offices should be filled, and that at all times persons may be found ready and competent to exercise official powers and duties. If, on a controversy arising as to the right of an

officer in possession, and upon notice that another claims the office, the public authorities could not pay the salary and compensation of the office to the *de facto* officer, except at the peril of paying it a second time, if the title of the contestant should subsequently be established, it is easy to see that the public service would be greatly embarrassed and its efficiency impaired. Disbursing officers would not pay the salary until the contest was determined, and this, in many cases, would interfere with the discharge of official functions.

It is well-settled that the acts of an officer *de facto* are valid so far as they concern the public or the rights of third persons who are interested in the things done. (*People* v. *Hopson*, 1 Den., 574, and cases cited.) "Society," says BRONSON, C. J., in that case, "could hardly exist without such a rule." The principle is, that those dealing with officers clothed with an apparent title should be protected, and that they should not be compelled to go beyond that and trace the title to its source. The case of the government paying a salary to an officer *de facto* is, we think, within the same protection, and that such payment is a defence to an action by the officer *de jure* against the officer or body charged with the duty of paying salaries to recover it. This does not deprive the person who has been wrongfully deprived of his office of a remedy. He may recover his damages for the wrong against the usurper; and the amount of salary, if not the fixed measure, may be considered by the jury in assessing the damages. (*U. S.* v. *Addison*, 2 How. [U. S.], 174; *The People ex rel. Burnet* v. *Miller*, 2 Mich., 459; *Glasbeck* v. *Lyons*, 20 Ind., 1.)

It remains to consider whether the plaintiff is entitled to recover the salary for the three months prior to March 1, 1874, during which the services were rendered by Keating, and for which no salary has been paid. The city has had the benefit of the services of assistant clerk during the time, rendered, it is true, by the *de facto* and not by the *de jure* officer. The plaintiff has regained possession of the office under a title which accrued prior to the time the services were rendered.

There is no apparent equity in permitting the city to escape from the payment of the unpaid salary, when claimed by the *de jure* officer. We think it may consistently be held that the plaintiff may treat the services as having been rendered by Keating for him, and that he may recover the unpaid salary upon that assumption. This does not interfere with the decision of this court in *Smith* v. *The Mayor* (37 N. Y., 518).

The doctrine which we have been called upon to declare in determining this controversy is both reasonable and safe. It is desirable that official duties should be performed by officers legally elected or appointed. But the rule which allows the title of the officer to be questioned in an action for the salary, and which subjects the *de facto* officer to liability for damages to the officer *de jure*, is a sufficient discouragement to attempts to take possession of an office by force or fraud, in exclusion of the rightful claimant.

The judgment should be affirmed.

All concur, except RAPALLO, J., not voting.

Judgment affirmed.