MYRON C. S. MORRISON, RESPONDENT, *v.* ORLANDO SAYRE, AS SOLE TRUSTEE OF SCHOOL DISTRICT No. 9, TOWN OF MORIAH, APPELLANT.

*Contracts made by a* de facto *trustee of a school district — their validity cannot be disputed, by his successor in office, on the ground that the party making them was disqualified by alienage.*

An action, brought to recover damages for a breach of a contract, by which the plaintiff was employed to teach a district school by one Will, the defendant's predecessor in office, was defended upon the ground that Will, although elected to and exercising the duties of the office, was disqualified from holding the same by reason of his alienage, and that the plaintiff had knowledge of this fact at the time of making the contract.

*Held,* that the defense was properly overruled; that the validity of Will's title and of the contract, could only be assailed by the people acting in their sovereign capacity as a State.

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict directed by the court at the Essex Circuit.

At the annual school meeting in district No. 9, of the town of Moriah, held August 24, 1884, Charles Will was elected trustee, and he thereupon accepted the office and acted as such trustee. Will, as such trustee, employed the plaintiff to teach the school in that district for twenty weeks, at six dollars per week; and the plaintiff agreed to so teach and to commence on the fifteenth of September following. On or about the twelfth of September another school meeting was held, and at that meeting Mr. Will resigned and the defendant was elected trustee in his place. The defendant, although he knew of the contract with the plaintiff, employed another teacher, and the plaintiff was excluded from and deprived of his employment. From September fifteenth to December first, a period of eleven weeks, the plaintiff was unable to obtain similar employment, but received some compensation for farm labor, and the amount of the verdict is the contract-price for teaching, six dollars per week, for eleven weeks, less the amount received by the plaintiff for such labor during school time. The defendant offered, but was not allowed, to prove that between September fifteenth and December first the plaintiff had an opportunity to work at farm labor for seventy-five cents a day, for at least one month, which he declined to accept.

The defendant introduced evidence, all against the plaintiff's objections, that Will was born in Canada of parents residing there; had resided in Moriah but three years; had not become a citizen, or filed or declared his intention to become a citizen, of the United States. That the plaintiff knew Will to be an alien, and that the school commissioner had expressed the opinion to Will that he was ineligible to the office of trustee, and that the plaintiff and Will had consulted the Code together and found that aliens could hold office under certain circumstances. The defendant made a motion for nonsuit, which was denied. He declined to ask for a submission of any question to the jury, and a verdict for the plaintiff was thereupon directed by the court.

*Waldo & Grover,* for the appellant.

*Richard L. Hand,* for the respondent.

LEARNED, P. J.:

Will was elected trustee of the school district. He accepted the office and acted as such trustee. He was, therefore, trustee *de facto*, even assuming that by reason of alienage he was ineligible. Being trustee *de facto* he could be removed from his office only by the people acting in their sovereign capacity as a State. No private individual, not even the school district which elected him, could turn him out of office. If any other man should acquire a good title to the office (assuming Will's title to be bad), that other man could not remove Will from the office. If the people did not choose to remove him, no other power could do this. And the reason of this is, that by whomever elected or appointed, an officer holds his office from the State. From the State he derives his authority, and till the State takes it away he may retain it.

It follows necessarily from this that till the State takes away his authority, all his official acts are valid as to third parties. This is both a logical and a beneficial result, and it has been asserted so often that it is needless to cite authorities. The defendant here seeks to make an exception, viz.: That where the party dealing with the officer knows of the invalidity of his title to the office, and where the official act is one to which the party had not a previous right, then the general rule does not apply. That is, for instance, that one who makes a contract with an officer *de facto*, knowing the invalidity of the officer's title, cannot enforce the contract.

But this exception cannot be recognized, and for this reason: In an official contract it is not the officer and the other contracting party who alone are interested. The people have an interest; they have a right to insist that such a contract shall be valid; they have a right to say that, so long as they permit their officer *de facto* to continue. in office, the government shall not be hampered or obstructed by the assertions of parties who deal with him, that he was not an officer *de jure*, and that they knew it. For the contract must be binding on both sides or on neither. In this particular case, for instance, if this defendant, the successor of Will, can assert against Morrison, that the contract was invalid for the reason above. mentioned, then Morrison could assert the same against Will or against the defendant, his successor. So that Will, an officer *de facto*, whose duty it was to make contracts like that in question, would be

prevented from making a valid contract, if the person with whom he contracted knew of the alleged defect in Will's title to the office. And to go one step further, the result would be, that by a general publication in the neighborhood of Will's alleged inability to hold this office, he would be practically deprived of all power to discharge the duties of this office in this particular. Now this cannot be. It would be indirectly ousting him of his office just so far as information of his alleged disqualifications could be spread ; and thus the people who chose him to be an officer, and who have a right to the performance of this duty among others, would be deprived of the right of having a valid contract made for a teacher of their school.

It is not, we repeat, an individual question. It is a public matter. The law has provided that there shall be an officer, whose duty, among other things, shall be to hire a teacher. The inhabitants of the district have chosen him. The State has not ousted him but permits him to remain in office. Shall he be prevented from making a valid contract because all those with whom he wishes to contract know that the State might oust him if it desired to do so ? Shall the school district have an officer who cannot contract, or who can contract only with those who are ignorant of the alleged defect in his title ?

The case of *State* v. *Carroll* (38 Conn., 449) is, of course, no authority here. And we think that, on the point in question, the views there stated are erroneous. They are not supported by the cases cited of *Rex* v. *Nish* (Andrews, 163); *Rex* v. *Bedford Level* (6 East, 356). The doctrine of this State is stated in *Dolan* v. *Mayor* (68 N. Y., 274), and we think it sustains the recovery here. Nor do we think that there was any error in excluding testimony. The plaintiff had contracted to do the work of a school teacher. Even though he had, during the summer months, done farm labor he was not obliged, when the defendant broke the contract, to seek farm labor during the period for which he had engaged to teach school. What he actually earned was credited to the defendant. And he was not able, for some time, to obtain another school.

The judgment should be affirmed, with costs.

BOCKES, J., concurred.

Judgment affirmed, with costs.