## THE PEOPLE AND DEVLIN a. CONOVER.

*Supreme Court, First District ; At Chambers, April,* 1858.

OFFICE.—JUDGMENT OF OUSTER.—WRIT OF ASSISTANCE.—EXE-
CUTION.

In an action brought by the People and a claimant, to try the title to a public of-
fice, upon the rendition of a regular judgment of ouster against the officer and in
favor of the claimant, the officer becomes ousted, and the party declared to be
entitled, upon taking the official oath and filing bonds (when required), becomes
*eo instanti* invested with the office.

A writ of assistance, or leave to issue an execution, should not be granted upon
such a judgment, directing the sheriff to put the successful party in possession'
of the office, and the books and papers belonging to it. So far as the office is
concerned, such a judgment executes itself. So far as possession of the books
and papers is concerned, the remedy provided by section 438 of the Code must
be pursued.

The former practice in proceedings in a *quo warranto,* and in an information in
the nature of a *quo warranto,* are not guides in proceedings in the actions which
the Code has substituted for those writs.

*It seems,* that in an action under sections 428 and 432 of the Code, an execution is
only proper for the purpose of collecting costs, and a fine, if any has been im-
posed.

Application for a writ of assistance to execute a judgment of ouster.

The action was brought under sections 428 and 432 of the Code, to try the title to the office of street commissioner of the city of New York, then exercised by the defendant Conover and claimed by the relator Devlin.

Upon the defendant's demurrer to the complaint, a judgment of ouster against the defendant Conover, and a judgment in favor of the right of the plaintiff Devlin, were rendered at general term, and these judgments, on appeal to the Court of Appeals, were affirmed. The judgment entered by direction of Mr. Justice Sutherland, upon filing the *remititur* from the Court of Appeals, was as follows:

AT A SPECIAL TERM, &c.

| The People of the State of New York, and Charles Devlin, *against* Daniel D. Conover. |
| --- |

On reading and filing the *remititur* from the Court of Appeals, in the above entitled action, by which it appears that, after hearing counsel for the respective parties upon the appeal taken to said Court of Appeals from the judgment rendered at the general term of this court, on the 11th day of March last, the said judgment of this court is in all things affirmed, with the costs of the appeal, to be paid by the said Conover to the plaintiffs herein; and that the said record and proceedings are remitted to this court to be proceeded upon according to law, and the plaintiff appearing and waiving such costs. On motion of James T. Brady, Esq., of counsel for the plaintiffs, it is ordered that said Charles Devlin have execution of such judgment. That the said Daniel D. Conover be ousted and excluded from the office of street commissioner of said city, and that the said Charles Devlin be admitted and put into the possession thereof, and of all the maps, books, documents, and papers appertaining thereto; and that the said Daniel D. Conover surrender such office to the said Devlin, and deliver to him all books, maps, documents, papers, and property appertaining to said office.

[Date.]

The defendant not having put the plaintiff Devlin into possession, *Mr. O'Conor* applied on behalf of Devlin for a writ of assistance, directing the sheriff " to cause the office of street commissioner, and all things appertaining thereto, and all maps, books, documents, and papers appertaining to the same office,

which may be found within your county, to be put into the possession of the said Charles Devlin."

DAVIES, J.—This application in part is based upon the idea that it is necessary to invoke the aid of the sheriff to put the plaintiff Devlin into the office of street commissioner. He took the office and all its franchises and emoluments upon the rendition of the judgment of this court, declaring him entitled thereto, upon taking the oath required by law, and executing and filing the bond required by the ordinances of the city. This would seem to have been well settled before the adoption of the Code.

Nelson, Chief-justice, in The People *a.* Stevens (5 *Hill*, 625), says: " When a person has been elected to an office, he is admitted to the full possession and enjoyment of it by taking the requisite oath, provided no other condition is prescribed,—this being what is called in the books *taking legal possession.*" He cites Rex *a.* Ellis (9 *East*, 252, note ;) 1 *Strange*, 583 ; Rex *a.* Bosworth (*Ib.*, 113) ; *Wilcox on Corp.*, 125, § 575.

Section 437 of the Code declares that if judgment be rendered upon the right of the person so alleged to be entitled, and the same be in favor of such person, he shall be entitled, after taking the oath of office, and executing such official bond as may be required by law, to take upon himself the execution of the office.

This court held in Welch *a.* Cook (7 *How. Pr. R.*, 262), that upon the rendition of a regular judgment of ouster in the suit of the people against a public officer and in favor of another individual for the office, the officer becomes actually ousted and excluded from office ; and the party declared to be entitled, upon taking the official oath and filing his bonds when required, becomes *eo instanti* invested with the office. It would seem, therefore, to be settled in this State that in a suit like the present the party declared entitled to the office takes it upon judgment being rendered. The judgment, so far as the office is concerned, executes itself. This is the plain language of the Code. Such has been the uniform practice in this State, certainly since its adoption, and before in cases of *quo warranto*, so far as my researches have extended. There is nothing, therefore, so far as the office is concerned, which the sheriff can seize and deliver to the plaintiff.

He has the office already in the most full and ample manner. What he has, cannot be taken from him by the sheriff and re-delivered to him. All which can be given to the plaintiff of the office, he has already. We have no power to place him in any particular locality, or in possession of any particular premises. So far as the books, papers, and documents appertaining to the office are concerned, it will be seen, if they are withheld from the plaintiff Devlin, he has a summary process to obtain them, and which is most effectual for that purpose. But it is suggested that in the proceeding heretofore known as that of *quo warranto*, the practice obtained to issue an execution to the sheriff to seize the office and deliver the same to the party declared entitled thereto. If such practice did obtain in that proceeding, a complete answer to the suggestion is found in the fact that, by section 428 of the Code, the writ of *quo warranto* and proceedings by information in the nature of *quo warranto* are abolished, and the remedies theretofore obtainable under those sections, are to be obtained by a civil action under the provisions of that chapter of the Code. This court held in Thurston *a.* King (1 *Abbotts' Pr. R.*, 126), that this section abolishes all three of the ancient remedies, of *scire facias*, *quo warranto*, and information in nature of a *quo warranto*. Whatever remedies were, therefore, obtainable under these ancient writs, they are expressly abolished by the Code, and new and different modes of procedure are substituted; but the cases do not sustain the position that under the ancient proceeding by *quo warranto* an execution upon the judgment was necessary to put the prevailing party into possession of the office. Forms are given of an ancient writ directed to the sheriff to seize the office, and take it from the usurper and deliver it to the king (see 2 *Kyd on Corp.*, 410; cites *Co. Lyt.*, 539 B); and thereupon the sheriff shall return a *scire* (*Co. Lyt.*, 540 B). This was said to be the regular course when judgment is for the king or the people, and the writ commanded the sheriff to seize the liberties with the king's or the people's hands. But Kyd says, in point of fact, the writ was not always issued (*Kyd on Corp.*, 410). The form of a judgment in *quo warranto* is to be found in Co *a.* Fowler (11 *Mass.*, 339), prepared by the Supreme Court of that State, and it contains no award of execution. It was a judgment of ouster against the defendant, and which, *ex proprio vigore*, seized the

The People and Devlin *a.* Conover.

office into the hands of the people. But the entire question presented in this case is so fully discussed in this court by the learned judge of the sixth judicial district of this State, in the case of Welch *a.* Cook (*supra*), and I so entirely concur in the views there expressed, that I shall adopt them as my own. After alluding to the provisions of section 438 of the Code, requiring the delivery of the books and papers appertaining to the office, to the party declared entitled to the office by the judge of the court, he says: "There is no provision either in the Revised Statutes or the Code of Procedure, for the issuing of any process, or taking any other proceeding upon the judgment, to remove the defendant from the office, and place the party entitled thereto in possession; and none is required. The rendition of the judgment itself virtually ousts and excludes the defendant from the office." This is apparent from the language of the statute itself. Section 441 of the Code provides that the judgment rendered in such a case shall exclude him from the office; and that such is the effect of the judgment is apparent also from section 437 of the Code, above already referred to, which provides that if judgment be rendered upon the right of the person so alleged to be entitled to the office, and the same shall be in favor of such person, he shall be entitled, after taking the oath, &c., to take upon himself the execution of the office; and it shall be his duty immediately thereafter to demand of the defendant in the action all the books and papers in his custody, or within his power, belonging to the office from which he shall have been excluded. The statute, therefore, is, if judgment be rendered upon the right of the party, &c., he shall be entitled to the office after taking the oath, &c.; and it is made his duty immediately to take the necessary steps pointed out by the statute to obtain possession of the books, &c., appertaining to the office from which he has been thus wrongfully excluded. The learned judge further says: "This view of the statute is greatly strengthened by the omission of the Legislature to provide for any process upon the judgment or other proceeding to remove the usurper and install the party entitled. The right to the office being established by the judgment, they have provided this summary remedy to compel the delivery of the books and papers; and if any process or proceeding of ouster were required upon the judgment to divest the defendant

of the office, and install the party entitled, the Legislature would undoubtedly have provided some remedy suitable to the case. Such a process, however, I apprehend, would be an anomaly in the law, and should be accompanied with some special instructions to the sheriff as to the mode of its execution. For a process to take from one man an office and give it to another, would be in practice a troublesome thing to execute, and I doubt whether the sheriff could even satisfy the party entitled thereto that he had delivered it to him, or convince the other party that he had disrobed him of it. It is insisted," says the same judge, as it is argued here, "that there are some precedents to be found in the early Reports in England, where the writ of seizure has been issued to seize the office or franchise into the king's hands. I have looked into these precedents, and they are all cases of a right to a franchise, such as a ferry or a market, which were capable of actual seizure upon the writ. But in the case of an office, no such writ is necessary. Holt (chap. 7) says : '*Such a case needs no writ of execution, for, in a quare impedit, if judgment be against the incumbent, the patron presents without more ado.*' (The King *a.* The Mayor of London, 1 *Show.,* 274, 276.)" The same judge also adds : "I have looked very carefully into the modern Reports of Westminster Hall, and I have not been able to find any use made of this writ; and the courts in England treat these judgments as actually ousting and removing the defendants from office."

It is very clear, therefore, to my mind, that the party adjudged entitled to this office does not need the aid of this court or of the sheriff to put out the defendant from the office, or to place him in it. The one is already removed, and the other has the office, and is entitled to discharge its duties and receive its emoluments from the time of the entering of the judgment declaring him to be so entitled. Neither is the writ necessary to put the party entitled in possession of the books and papers appertaining to the office. The Legislature has provided another mode for obtaining them. That mode must be regarded as abolishing all others, and as it is effectual and summary, I can see no reason for resorting to any other.

By section 436 of the Code, if the defendant refuses to deliver over to the party entitled the books and papers, he shall be deemed guilty of a misdemeanor, and the proceedings already

referred to may be had to compel such delivery. A resort to such proceedings is the remedy presented by the statute, and we cannot see that we have the power to adopt any other. As that remedy is, in our judgment, effectual, we see no reason for making any other, if any such existed. For the reasons stated, we think that the aid asked for by an execution to the sheriff is not required, and the application for such execution must be refused. An execution can only be issued, in a case like the present, to collect the costs, and a fine, where one is imposed.

The execution asked for on this application goes further than the judgment. This cannot be done in any case.

The novelty and importance of the questions presented on this application have induced me to consult my brethren of this judicial district, and they all concur in the views here announced.

---

## KAMLAH *a.* SALTER.

*New York Common Pleas; General Term, April,* 1858.

PLEADING.—PROMISSORY NOTE.—FRIVOLOUS DENIAL.

In the New York Common Pleas, in an action against the maker of a promissory note, payable to his own order, his answer will be held frivolous if it merely denies that he ever indorsed, or delivered, or in any way transferred the note to the plaintiff, and alleges that the defendant has no knowledge or information sufficient to form a belief whether the note was ever delivered to the plaintiff, or in any way transferred to him by any one.*

Appeal from order granting judgment on account of the frivolousness of the answer.

The complaint alleged that the defendants made a promissory

---

* It seems that the rule is different in the Supreme Court and in the New York Superior Court. The weight of authority is, that the answer is not frivolous if it denies whatever allegations the complaint employs to show title in the plaintiff. (Temple *a.* Murray, 5 *How. Pr. R.*, 329; Metropolitan Bank *a.* Lord, 1 *Abbotts' Pr. R.*, 185; Sherman *a.* Bushnell, 7 *How. Pr. R.*, 171; Flood *a.* Reynolds, 13 *Ib.*, 112; Hecker *a.* Mitchell, 5 *Ante*, 453; and compare Marshall *a.* Rockwood, 12 *How. Pr. R.*, 452; Holstein *a.* Rice, 15 *Ib.*, 1; Witherspoon *a.* Vandolar, 15 *Ib.*, 266; and Wirgman *a.* Hicks, *Ante* 17.)