JAMES E. McVEANY, Appellant, v. THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

A municipal corporation, whose disbursing officer has once made payment of the compensation given by law to an office, to one actually in the office, discharging its duties, with color of title, and with his right thereto not determined against him by a competent tribunal, is protected from a second payment.

The rule is the same whether the compensation is by fixed fees payable from the municipal treasury for the specific service rendered, or by an annual salary payable at recurring periods; so, also, it is immaterial whether the office is held by appointment or by election.

But when there has been such an adjudication, any amount of compensation for services rendered, not paid to the intruder in the office, is due and payable to the one adjudged to be the officer *de jure*, and may be recovered by the latter of the municipality.

So, also, where, after an adjudication against the one in the office, and after notice thereof to the disbursing officer of the municipality, the intruder still continues to perform the duties of the office, the rendition of the services is in behalf of the one entitled to the office, the compensation accruing therefor belongs to him, and he may maintain an action against the municipality to recover the same, although the disbursing officer has paid it to the intruder.

*It seems*, that where the compensation is by fees paid for each particular official act, not by the municipality, but by the individual for whose benefit the service is rendered, the corporation is not liable in any event.

The power given to the board of assistant aldermen by the charter of the city of New York of 1873 (§ 6, chap. 335, Laws of 1873), to judge of the election of its own members is not exclusive, but cumulative only; it does not oust the courts of jurisdiction.

In an action brought to recover the salary of the office of assistant alderman for the year 1869, plaintiff put in evidence a judgment-roll in an action in the Supreme Court, in the nature of *quo warranto*, wherein he was relator, against one C., to test the title to the office. It was adjudged therein that C. had usurped and intruded into the office; that he be and was thereby ousted therefrom, and that plaintiff was entitled to the office for the year aforesaid. On June 18, 1869, plaintiff gave notice of the judgment to the comptroller of the city. He also made demand of the board that it recognize him, and give him his seat, and was refused. C. had received the canvassers' certificate of election; he took the oath of office; discharged the duties of the office for the year, and received the salary. *Held*, that the judgment established for the purposes of this case, that plaintiff was the officer *de jure*; that he was entitled to recover the salary accruing after notice of the judgment to

the comptroller, but not that which became due and payable, and was paid to C. prior to such notice.

Also, *held*, that the omission of plaintiff to apply for a mandamus requiring the board to allow him to take his seat, and to perform the duties of the office was not a defense.

*It seems*, that a mandamus would lie in such case.

The board of assistant aldermen, after notice was given to it, made inquiry into the matter, and adjudged C. to be entitled to the contested seat. Plaintiff was not a party in person or by counsel to the inquiry. *Held*, that plaintiff was not precluded by their judgment; that such judgment did not countervail that of the Supreme Court, which being the first and unreversed, was of the greater force, and bound the city and its disbursing officer.

As to whether if plaintiff had appeared in the proceedings before the board simply to set up and insist upon the judgment in his favor; he would have been prejudiced by its decision, *quære*.

*McVeany* v. *The Mayor* (1 Hun, 35), reversed; *Conner* v. *The Mayor* (5 N. Y., 285); *Smith* v. *The Mayor* (37 id., 518); *Butler* v. *Penn.* (10 How. U. S., 402); *City of H.* v. *Geer* (3 Dutcher [N. J.], 265); *Auditor* v. *Benoit* (20 Mich., 176), distinguished.

(Argued February 2, 1880; decided February 24, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of defendant, entered upon an order dismissing plaintiff's complaint on trial. (Reported below, 1 Hun, 35.)

The nature of the action and the facts appear sufficiently in the opinion.

*James Clark* and *Edward Jacobs*, for appellant. The judgment in the *quo warranto* proceedings judicially determined plaintiff's right and title to the office, and this adjudication is not only conclusive on the parties to that action, but on the city and all others in any way affected by the result. (3 Cooley's Blackstone, 263; *People* v. *Cook*, 14 Barb., 259; 4 Seld., 67; *People* v. *Conover*, 6 Abb., 220; *In re Welch*, 7 How., 282; *People ex rel. Hawes* v. *Walker*, 23 Barb., 304; *Morgan* v. *Quackenbush*, 22 Barb., 77.) *Quo warranto* was the proper remedy to try the plaintiff's title to the office. (Code, § 434; *Lewis* v. *Oliver*, 4 Abb.

Pr., 121, 125; *Bowen* v. *Lease*, 5 Hill, 221; *Williams* v. *Potter*, 2 Barb., 316; *Mayor* v. *Walker*, 4 E. D. Smith, 258; *People* v. *Dearing*, 1 Hilt., 271; *Ex parte Heath*, 3 Hill, 52; *People* v. *Cicott*, 16 Mich., 283; Const. of 1846, art. 1, § 2.) The statutory remedy given to contest an election does not oust the jurisdiction in the nature of a *quo warranto.* (*People* v. *Holden*, 28 Cal., 123; *Commonwealth* v. *McCloskey*, 2 Rawle, 369; *Kerr* v. *Trego*, 47 Penn. St., 292; *People* v. *Holden*, 28 Cal., 123; Dillon on Mun. Cor., §§ 141, 142.) While the Legislature might perhaps confer a concurrent power upon the board of assistant aldermen, it could not take away from the Supreme Court any part of the general jurisdiction conferred upon it by the constitution. (*Alexander* v. *Bennett*, 60 N. Y., 204.) The title to the office having been legally established before a competent jurisdiction, the salary belonging to it followed the legal title, and plaintiff became and was entitled to it during the term for which he was elected. (*People* v. *Smyth*, 28 Cal., 21; *People* v. *Ocilton*, id., 44; *Carroll* v. *Liberthales*, 37 id.; and see 45 Mo., 453; 60 Penn. St., 136; *United States* v. *Addison*, 6 Wall., 291; 50 Barb., 516.)

*Francis Lynde Stetson*, for respondent. The adjudication of the board of assistant aldermen that the plaintiff was not, and that Culkin was duly elected as member from the Ninth assembly district, is final and conclusive upon all parties. (1 Black. Com., 163, 178, 179; 1 Kent's Com. [12th ed.], 235; Cushing's Law and Practice of Legislative Assemblies, § 1050; Rawle on Const., 46; Cooley's Const. Limitations, 133; Federal Const., art. 1, § 5, subdivision 1; New York Const. 1777, §§ 9, 11; id. 1821, art. 1., § 3; id. 1846, art. 3, § 10; Cooley's Const. Limitations, 264; *State* v. *Tomlinson*, 20 Kansas, 692; 1 Story on Const., § 833; High on Extraordinary Remedies, § 403; see, also, *Supervisors of Mason Co.* v. *Minturn*, 4 W. Va., 300; *Mayor of Vicksburgh* v. *Rainwater*, 47 Miss., 547; *State of Ohio* v. *Grisell*, 15 Ohio St., 114–134; *Peck* v. *Weddell*, 17 id., 271; *Com. ex rel.*

*McCurdy* v. *Leach*, 44 Pa. St., 332–334; *Lamb* v. *Lynd*, 44 id., 336; *Com.* v. *Meeser*, 44 id., 341–343; *People ex rel. Williams* v *Common Council of Rahway*, 33 N. J., 111–114; *Butler* v. *Palmer*, 1 Hill, 324, 325; *Hickox* v. *Tallman*, 38 Barb., 608; *Lennon* v. *The Mayor*, 55 N. Y., 361; *Smith* v. *Lockwood*, 13 Barb., 209–217; *Ohio* v. *Grisell*, 15 Ohio St., 114–134; *Com.* v. *Leach*, 44 Pa. St., 332–334; *Dudley* v. *Mayhew*, 3 Comst., 9; *Demarest* v. *Mayor*, 74 N. Y., 171; Code, § 434; *People ex rel. Hawes* v. *Walker*, 23 Barb., 804; *People ex rel. Crane* v. *Ryder*, 12 N. Y., 433; S. C., 16 Barb., 370; *Hunter* v. *Chandler*, 10 Am. Law Register [N. S.], 440; Institutions of the English Government [London, 1863], 117; May's Law of Parliament [London, 1868], 54; *Barnardiston* v. *Soame*, 6 Howell St. Tr., 1092, 1119; Onslow in 1680, 2 Vent., 37; 3 Liv., 39; *Prideaux* v. *Morris*, 2 Sabk., 502 ; 1 Lutro, 82; 7 Mod., 13; Constitutional History of England [Widdleton, New York, 1874], 273, 288; 2 Hough's American Constitutions, 615.) The plaintiff having rendered no service as assistant alderman, can recover no salary from the defendant, a municipal corporation. (*Smith* v. *The Mayor*, 1 Daly, 219–223; *State* v. *Rahway*, 33 N. J., 111; *Rex* v. *Winchester*, 7 A. & E., 215; Dillon on Munic. Corp., § 213; *Matt* v. *Connoly*, 50 Barb., 516–519; *The People* v. *Snedeker*, 3 Abb., 233; *Connor* v. *The Mayor*, 1 Seld., 285; *Smith* v. *The Mayor*, 37 N. Y., 518; *The Auditors of Wayne Co.* v. *Benoit*, 20 Mich., 176–180–186.) The entire salary for the year having been paid to Culkin, the *de facto* officer, no further claim can be made upon the city treasury. (*Dolan* v. *Mayor*, 68 N. Y., 274.)

FOLGER, J. This is an action brought by the plaintiff to recover from the defendant the salary, for the year 1869, of the office of assistant alderman for the ninth aldermanic district in the city of New York.

The plaintiff claims that he was duly elected to that office for that year. He gave no parol proof of that fact. He

Opinion of the Court, per Folger, J.

put in evidence a judgment-roll in the Supreme Court, in the case of the *People ex rel. James E. McVeany* v. *Peter Culkin.* From that it appears that the case was an action in the nature of a *quo warranto*, to test the right of Culkin to the office above named. It was adjudged in that case, that Culkin had usurped and intruded into that office, and that he be, and that he thereby was ousted therefrom. It was also adjudged that McVeany, the plaintiff here, was entitled to that office since the first day of January, 1869, and for one year beginning on that day and ending on the last day of December of that year. The defendants contend that this adjudication is of no effect, for that, as they urge, the board of assistant aldermen has the exclusive jurisdiction to judge of the election of its own members. Power to judge is given by the charter of the defendants, and it is claimed that thereby the courts are excluded from any jurisdiction in such case, except to review the action of the board after its action has been had. We are not of that mind. The same question has been presented to us in the case of *The People ex rel. Hatzel* v. *Hall* (decided at this sitting *); and we there held, that the Supreme Court was not ousted of jurisdiction in such case, by that provision in the charter, and that the power to judge given to the boards of the common council was not exclusive, but cumulative only.

We must hold, then, that the judgment thus proven establishes, for the purposes of this case, that McVeany, the plaintiff, was *de jure* the assistant alderman for that district for that year.

It appeared on the trial that McVeany had not in fact held and exercised that office, nor performed any duty or rendered any service in it. It further appeared that at the election held for the office, there was given to Culkin the canvassers' certificate that he was elected, that he took the oath of office and discharged the duties of it for that year, and received from the defendants, by their comptroller, payment of the official salary for that year. Thus he was *de*

*Ante p.* 117.

*facto* in the office as the incumbent thereof, under color of title thereto. It is a fact of some importance too, that McVeany did not take an oath of office until after that judgment, to wit: on the 18th of June, 1869.

On this state of facts the defendant urges, that upon the authority of the cases of *Conner* v. *The Mayor* (5 N. Y., 285), and *Smith* v. *The Mayor* (37 id., 518), the plaintiff cannot recover, for that he rendered no service to the defendants and earned no compensation. In 5 N. Y. it is said, per Ruggles, Ch. J., that "the right to compensation grows out of the rendition of the services, and not out of any contract between the government and the officer that the services shall be rendered by him." The same idea is expressed by Daniel, J. in *Butler* v. *Penn.* (10 How. U. S., 402–416): "The promised compensation for services actually performed and accepted * * * may undoubtedly be claimed, both upon principles of compact and of equity; but to insist beyond this * * * upon a reward for acts neither desired nor performed, would appear to be reconcilable neither with common justice nor common sense." The learned judges in these instances, were combating the notion that a right to a public office was private property, or held by contract, so that it could not be taken away or affected, or the emoluments of it regulated during the term of the incumbent. The cases did not present directly the question, whether an officer could, by virtue of his right alone to the office, having in fact rendered no service, recover the compensation affixed to the office, when it had been paid to one in fact in the office and doing the service therein. But the cases do distinctly decide, that the relation between such public officers and the authority superior to them, is not that of contractors with each other, and that a claim to official emolument cannot be based upon the idea of a property interest in the office, or of that of an agreement to pay the same. The case of *Smith* v. *The Mayor* (*supra*) does expressly hold, that an officer *de jure*, kept from the exercise of his office, while waiting and will-

ing to perform the duties of it, there being an officer *de facto* rendering the official services and receiving the payment authorized by law, may not recover of the municipality the compensation attached to the office, for the time for which his title to the office was in dispute and he did not exercise it. The judgment is put upon the ground stated in *Connor's Case (supra)* ; and that, as there was no rendition of services nor a contract for payment, the action must fail. We do not find in the reports of this court, any case later than those above cited, where they have been in this respect either expressly approved or adversely commented on. In *Hadley* v. *The Mayor*, (33 N. Y., 603); there is an *obiter* remark of DENIO, Ch. J., to the effect that an action for the salary of an office might probably have been successfully defended, on the ground that the officer failed to perform the duties of the office, and had acquiesced in the irregular order for his dismissal. In *The City of Hoboken* v. *Gear*, (3 Dutcher [N. J. L. R.], 265), it is said, (p. 278), that the relation between the municipality and an officer of it, is at the most a contract that while the officer performs the duties of the office, he will receive the compensation provided by law ; and *Connor's Case (supra)*, is cited with approval, and the words of RUGGLES, Ch. J. that we have quoted above are repeated with emphasis ; and the force of the opinion is to the end, that a performance of the duties is needful for a recovery of the compensation. *The Auditors of Wayne Co.* v. *Benoit*, (20 Mich., 176), is to the same effect, though the dissent of COOLEY, J. and the qualified concurrence of CHRISTIANCY, J. takes from the force of the decision. And finally, there is the case of *Dolan* v. *The Mayor*, (68 N. Y., 274), which, while protesting that it is not meant to interfere with the decision in *Smith* v. *The Mayor (supra*, p. 283), puts the inability to recover of one who, though an officer *de jure*, has not actually performed the duties, upon grounds of public policy and overweening public convenience. There the office had been taken by a usurper who rendered the services due from it, and for a time received

from the municipality the compensation provided by law. There an action was brought on the relation of him rightfully entitled, and it was adjudged in his favor. It was held that for so much of the salary as had been paid to the intruder before the judgment of ouster, the officer *de jure* could not recover. This conclusion was reached by the consideration, that the duty put upon fiscal officers to pay official salaries could not safely be performed, unless they are justified in acting upon the apparent title of claimants, inasmuch as they would otherwise be placed in peril of deciding wrongly who was the officer *de jure*, and of putting the governmental authority, of which they were the disbursing agents, to the hazard of a compulsory payment of salary a second time. But it was also held in that case, that for so much of the salary accruing due before the judgment in favor of the officer *de jure*, and which had not been paid to the intruder, the officer *de jure* was entitled to recover. It was recognized that the salary is the compensation for the rendition of services; but it was also seen, that so much of the salary had not been paid to any one; that the city had had the benefit of the services, though rendered by an intruder; that he could not recover therefor; that there was no equity in freeing the municipality entirely from the payment of it; and it was held consistent with all rules, to treat the services as having been rendered by the intruder in the stead of the officer *de jure*, and to permit the latter to recover on that assumption.

The learned counsel for the appellant, in the case in hand, sought to distinguish between cases, where the compensation was by fixed fees for the specific service rendered, and where it was by an annual salary, payable at recurring periods. We are not able to perceive such a distinction as will affect the applicability of the cases cited. *Smith* v. *The Mayor* (*supra*), was a case where the amount of the compensation depended upon the amount collected, and the amount to which the fees would run, at a given rate upon the amount collected, was the compensation for the duty rendered. That

compensation does not appear to have been retained by the collector from the sums received by him. But the whole amount collected by all of that kind of officers, as we understand it, went into the city treasury, and the compensation of each deputy collector (and there were four of that kind of officers), was paid from the city treasury to each of them, upon a calculation of what each was entitled to upon the total amount collected by the four. We do not perceive how this differs in principle, as far as the matter now in hand is concerned, from the case of an annual salary, payable at fixed times through the year. And it is to be noticed, that of the cases cited some of them were actions for salary ; and in the opinions in others, no distinction is taken between a compensation by salary and by fees. Indeed, if the compensation was by fees, a specific fee, payable to the officer for each particular official act done or service rendered for any private person, there could be no basis for an action against the corporate body, for it could not be said that the service was rendered for it, or that it received the money from the private person for the use of the officer *de jure*. Therefore, to make any ground for an action against the municipality, the official emolument must have been so collected, if by fees, as to go into the municipal treasury, or be in terms payable therefrom. Then the difference would be, only that that by salary was a fixed and certain sum, and that by fees uncertain.

The learned counsel also suggests, that there is a difference where the office is held by appointment and by election. He bases the distinction that he claims, upon the power that is in the appointing source to revoke on the one hand, and the right of the officer to resign on the other. But there is the same right to resign an elective office, and the same power in the authority that created it to abolish it or to shorten the term of it.

It is, then, to be deduced from the cases in this State, that, as a general principle, the rendition of official service must precede a right to demand and recover the compensation

given by law to the officer; that the disbursing officer of a municipality is protected from a second payment of that compensation, and so is his superior, when he has once made payment to one actually in the office, discharging the duties of it with color of title, with his right thereto not determined against him by a competent tribunal; that when there has been such an adjudication, any amount of compensation for services rendered, not paid to him, is due and payable to the one adjudged to be the officer *de jure*, and may be recovered by the latter of the municipality. It will be seen that the facts in these cases do not entirely cover the facts of the case in hand. Here the compensation given to the office has been paid to the intruder throughout the whole term of the office, notwithstanding that when that term was not yet half spent there had been an adjudication that the plaintiff in this case was lawfully entitled to the office, and that Culkin was a usurper thereof; and notwithstanding that the fiscal officer of the municipality had been at once made known of that adjudication. We must seek to apply the principles established by those cases to this new state of facts.

It is true that the plaintiff, though willing so to do, did not in fact render to the city of New York any service as assistant alderman; and the *Connor Case* and *Smith Case*, without the *Dolan Case*, would seem to stand in the way of his claim for compensation. But in the light of the *Dolan Case*, Culkin, the intruder, did render service in the office that may be counted for the good of the plaintiff. It is true that the fiscal officer of the municipality has paid Culkin the salary for the whole term of the office. If he paid it in ignorance of the falsity of Culkin's claim to the office, and in view of his actual possession of it with color of title, he and his superior would have good stand against the demand of the plaintiff. By the rule in the *Dolan Case*, that fiscal officer was not bound to make inquest into the right to the office in clamor between the plaintiff and Culkin; and so long as the latter remained in the office in fact, with color of title to it, payment to him was all that the municipality

could be compelled to make. Besides that, McVeany had not taken the oath of office until after the adjudication in his favor. He could not enter upon the duties of his office before he did that (1 R. S., 119, § 20) ; and until he did that he had no title to exercise the office, and could render no services, and, of course, earn no compensation. (Cole on Crim. Inf. and Quo Warr., *149, and cases cited.) But when the Supreme Court had adjudged that Culkin was a usurper, and that McVeany was of right the officer, and McVeany had taken the oath of office, and the comptroller was made known thereof, the rule in the *Dolan Case* ceased to work for the latter. He was not bound to inquire ; but to know then, he need not inquire. The judgment brought to his notice showed that judicial inquiry had been made for him and a result reached. After that, he made payment of his own will, not in ignorance, not free from duty to obey the judgment, but with knowledge. He knowingly paid to a pretender. He was not, nor was the city, any longer protected in the payment to Culkin, and were bound to retain the arrears of salary, as they accrued due and payable, for the rightful officer, if there was a rendition of the services required of the officer by law. There was a rendition of services in fact. It was made by Culkin. After the judgment against him his rendition thereof was, by the other rule in *Dolan's Case*, a rendition in the behoof of McVeany, and the salary thereafter accruing and unpaid therefor belonged to the latter and should have been paid to him.

This is so, unless some things in the case now to be noticed, give protection to the comptroller and to the city. After the rendition of the judgment in his favor, McVeany took no judicial action to enforce it. He took the oath of office. He gave notice of the judgment to the comptroller, and also to the board of assistant aldermen. He made demand from the board of his seat among them, and was refused. He did not move the courts to aid him in getting the actual possession of his seat in the board. It did not need, so far as Culkin was concerned, that he should. The rendition of a

regular judgment of ouster, against an intruder into a public office, actually puts him out of the office and excludes him therefrom, and the person adjudged entitled to it, upon taking the oath of office and giving bonds if any are required by law, becomes *eo instanti* invested with the office. (*Welch* v. *Cook*, 7 How. Pr., 262; *The People* v. *Conover*, 6 Abb. Pr., 220.) There is no provision, either in the Revised Statutes or in the Codes, for the issuing of any process, or taking any other proceeding upon the judgment, to remove the usurper from office and place the party entitled thereto in possession; and none is required. (*Ib.*) There is a duty yet upon the officer *de jure*. It is to demand of the intruder all the books and papers of the office; and there is a summary mode to compel the delivery of them. That duty did not press upon the plaintiff in this case; for the intruder, it is inferable from the character of the office, had no books or papers necessary to the exercise of the office by the rightful holder of it.

It may be doubted whether the rule stated in the cases last cited, is applicable in full force to such a case as this. Those were cases in which the office was of a kind to be held by one person singly, like that of sheriff, and not in co-operation and fellowship with others, like that of a member of a body or board made up of several of equal right and privilege, and where the act, or refusal to act, of the board might render ineffectual, in fact, a judgment in favor of a rightful claimant to a seat therein. It may well be, that in the case of an office to be held by one alone, the judgment does operate *per se* to put into it the rightful claimant, because he can go forward at once of his own will in the discharge of the duties of it. But when to exercise the office there is needed admission to a place where the duties are to be done, among several others who have equal rights and the formal legal, and the actual physical, power to refuse admission to a place among them, and who refuse admission, a different case is presented; and it seems that the court may be moved to send its mandate to the board to open the way

to the rightful officer to his place among them and to a vote and all other privileges. (See A. & A. on Cor., § 702, and cases there cited.) However that may be, we do not think that the omission of McVeany to move the courts for a *mandamus*, avails for the protection of the defendant in this case. The comptroller had notice of the judgment of ouster, and was forbidden at the same time from paying salary to Culkin, and it was his duty to observe the judgment.

It is true that upon the notice of the plaintiff having been given to the board, it made inquiry into the matter and adjudged that Culkin was entitled to the seat. Had the plaintiff been a party to that proceeding, a serious question would have been presented, whether he was not bound by the result of it. But it does not appear that he promoted the inquiry, or took part in it. The minutes of the board assert that he appeared in it by counsel. This he expressly denies in his testimony on this trial, and he is not contradicted by anything in the case save those minutes. As the plaintiff was nonsuited by the court, and his complaint dismissed at the trial, the testimony, and all inferences from it, are to be made most strongly in his favor. It must be taken that he was not a party, in person or by counsel, to the inquiry by the board, and is not precluded by its judgment. Nor does that judgment countervail the one given before it was, by the Supreme Court. That being the first upon the same matter, and unreversed, was of the greater force, the general jurisdiction of the Supreme Court therein being at least equal and concurrent, and jurisdiction of the case having been first taken by it. It bound the city and its disbursing officer. Moreover, had he appeared in the proceedings by the board, yet only to set up and insist upon the judgment in his favor by the Supreme Court, it may be doubted whether he would have been prejudiced by the action and conclusion of the board ; and the evidence does not war with this view of his acts.

We thus come to the conclusion, that for the salary accruing due and payable before the notice to the comptroller of

the judgment of the Supreme Court, the plaintiff cannot recover; for that after that date ·he can. By a request made by the plaintiff for the court to direct a verdict for the salary, from the 1st day of July, 1869, that seems to be the date at which the plaintiff conceives his right to it may have begun. The defendant will not find fault with· that as a starting point, for in its points, the 18th day of June, 1869, is named, in the contingency that this court take the view which has been herein expressed. ·

The trial court, on the facts before it, should not have shut out the plaintiff by a nonsuit, from an opportunity of a verdict for that portion of the salary for the year.

The judgment should be reversed and a new trial had, with costs to abide the event.

All concur, except CHURCH, Ch. J. and MILLER, J., both absent from argument.

Judgment reversed.