STATE EX REL, JEREMIAH CRONIN v. EDWIN O. ESHELBY, COMPTROLLER OF CINCINNATI.

1. AN OFFICER TO BE ENTITLED TO HIS SALARY MUST HAVE QUALIFIED.

An officer, to be entitled to the salary of an office, must have qualified thereto in the manner provided by law.

2. PAYMENT OF THE SALARY OF AN OFFICE TO A DE FACTO OFFICER.

Where a municipal corporation has paid the salary of an office to a de facto officer, it will not be required to pay the salary a second time to a de jure officer, who has been excluded therefrom, pending litigation as to the title to the office.

APPEAL from the Court of Common Pleas of Hamilton county.

SWING, J.

This is an action for mandamus by the relator, Cronin, to require the city to pay him the sum of $1,500, salary as wharf-master.

The facts out of which the case arose, are briefly these: Cronin was appointed wharf-master by the city council of the city of Cincinnati in 1884, and was reappointed in 1885. At the spring election of 1885, one Carson was elected by the people as wharf-master, and was inducted into office, and acted as wharf-master from the 21st of May, 1885, up to about the 27th day of April, 1886, when by an action in quo warranto in the Supreme Court, Carson was ousted. From May, 1885, up to April, 1886, Carson drew the salary. On these facts Cronin brought this suit, claiming he was entitled to the salary. The city filed an answer setting up three defenses: One was that there was no money in the treasury to pay this salary, and that, under the law, mandamus would not issue to the comptroller or auditor requiring him to draw his warrant on a fund, when there was no money there to pay it. Another defense was, or is, that he has an adequate remedy at law, and that he can bring his suit and collect this money at law. Another defense is, that the city should not be compelled to pay the salary, having once paid it to a de facto office. It is further set up in the answer, that Cronin never qualified to the officer. That seems to go with the defense that having once paid the salary, the city would not be required to pay it again. A demurrer was filed to this answer, which the court of common pleas overruled; judgment was given for the relator, and appeal taken to this court.

We have thought it necessary to only consider the two elements in this case, first as to whether or not this party was entitled to recover anything, never having qualified for the office.

In order to qualify himself under the law, it would be necessary for him to give bond and take oath of office; this he did not do. It is claimed, however, that he did give bond and take the oath of office under his appointment in 1884, and that under the law he was entitled to hold the office until his successor was legally elected and qualified, and that the Supreme Court having decided that Carson was not legally elected, he had the right to retain the position under the provisions of the statute.

Now, on the question as to whether a *de jure* officer is entitled to be paid a salary that has once been collected by a *de facto* officer, the authorities are in conflict. The authorities most relied on here are two from California, one in 28 Cal., page 21, and one in 37 Cal., page 93. The syllabus in the case in 37 Cal., is: " The salary of an officer is incident to its title, and not to its occupation; and one elected to an office who has qualified and is ready to perform its duties, is entitled to its salary, even if it is occupied by an intruder."

This authority certainly is based upon the theory, that one who has qualified to the office is entitled to the salary, and that qualification is a necessary precedent to be entitled to the pay. Now, in State ex rel. Peters v. McCollister, 11 O., 46, 50, Judge Hitchcock uses this language, in a case, however not exactly the one here, but, we think, the rule, announced there is a sound proposition of law, which is applicable to this case. He says: "An incumbent of an office is one who is legally authorized to discharge the duties of that office. For instance, a man who is elected county treasurer, is required to give bonds and take the oath of office. Now, these things must be done before he can discharge the duties of the office; and if not done in due time, the office itself is vacant—there is no incumbent. So, where a man is elected judge, he does not, by the election, become a judge. He must receive a commission, as evidence of his authority to act; must take an oath of office, and have it endorsed on his commission. When this is done, and not before, is he an 'incumbent' of the office."

Now we do not think, in this case, the fact that this party held over, takes him out of that rule of law that he was required, if he held over, to take the oath of office and give bond.

But we have considered the other question. If he had given bond and taken the oath of office, and the party had kept him out of the office, in our judgment, the weight of authority is against the law as claimed by the plaintiff here. Offices are not created for the benefit of individuals. They are for the benefit of the public; and we think the decision in 38 O. S., 18, while there is no authority, probably, in our state directly in point, inclines to that view. The case is Steubenville v. Culp, and the syllabus, is as follows: "A police officer, suspended from office, by the mayor of the city, under the authority granted by sec. 121 and 211 of the Municipal Code, is not entitled to wages during the period of such suspension, notwithstanding the council declared the cause of suspension insufficient." The court in the case, page 20, says: "Offices are held, in this country, neither by grant nor contract, nor has any person a vested interest or private right of property in them."

There is also a strong case in Michigan, Auditor v. Benoit, 20 Mich., 176, where Judge Christiancy has carefully considered this question, and bears out the views here expressed. Also one in Kansas, Commissioners of Saline County v. Anderson, 20 Kan., 298. See also Smith v. Mayor, 37 N. Y., 518; Dolan v. Mayor, 68 N. Y., 274; McVeany v. Mayor, 80 N. Y., 185; Parker v. Supervisors, 4 Minn., 62; Michael v. City of New Orleans, 32 La. Ann., 1094. It seems to us to be the better doctrine, and we understand it to be a well settled principle, that the acts of a *de facto* officer are, in so far as the public are concerned, good, and must be recognized and treated as legal by the public. It is not the business of the public to run about and see whether or not this person or that is entitled

38  C. C.     1

to an office, or to wait to see whether the courts will give it to this man, or that. We go on the theory, that the public are more interested than the individual, and its interests are first to be consulted. The public has the right to be first looked after, and the individual interest must be subordinated.

Of course, under our law, and it would seem reasonable, a *de jure* officer would have the right to recover from a *de facto* officer whatever salary the *de facto* officer has collected which should have been paid to the *de jure* officer, and we think that is the person, and there is the place he should pursue his remedy. The writ will be refused.

J. M. Dawson and Moses F. Wilson, for plaintiff.

Coppock, Cox & Gallagher, City Solicitors, for defendant.

---

## RESCISSION. 471

[Crawford Circuit Court, September Term, 1887.]

Follett, Haynes and Upson, JJ.

(Judge Follett, of the Fifth Circuit, and Judges Haynes and Upson of the Sixth Circuit, taking the places of Judges Moore, Seney and Beer of the Third Circuit.)