## PEOPLE *ex rel.* HARPER v. ADAMS.

### *In re* HARPER.

*(Supreme Court, General Term, Second Department.* **May 9, 1892.)**

MANDAMUS TO REINSTATE DISCHARGED VETERAN—DELAY.
Relator, an honorably discharged Union soldier, was discharged from the department of city works in the city of Brooklyn in December, 1887, without a hearing. In May, 1891, he, for the first time, applied to be, and was, reinstated by the commissioner. *Held,* that his delay was so unreasonable that the court, as a matter of discretion, should deny his application for a *mandamus* directing his reinstatement.

Appeal from special term, Kings county.

Application for a writ of *mandamus,* on the relation of John Harper, to compel John P. Adams, commissioner of the department of city works in the

city of Brooklyn, to restore him as a laborer in said department. From an order granting a writ of peremptory *mandamus,* defendant appeals. Reversed.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Almet Jenks,* Corp. Counsel, and *Richard B. Greenwood, Jr.,* Asst. Corp. Counsel, for appellant. *Sidney Williams,* for respondent.

PRATT, J. There is great doubt whether the law giving a preference in public employment to veterans was ever intended to cover the case of a member of a militia regiment, temporarily called out for a few days' service in the late Rebellion, but was intended to apply to members of volunteer regiments, regularly mustered into the service. Almost all, and I think all, the militia regiments, were at some period during the war called out for temporary service; but nobody ever supposed that thereby they all became veterans by such service. If such is the construction, then such service of one day would make a veteran. The word "veteran" is defined by Webster as one "who has grown old in service, and has had much experience; one who has been long exercised in any service, particularly in war." Under this definition, it cannot be fairly said that the relator is a veteran. But it is not necessary to determine this question, but a statement of the fact of the nature of the service throws some light upon the merits of his claim, inasmuch as it seems to be conceded that the only object of obtaining a decision herein is to lay a basis for a claim against the city for about four years of services that were never rendered, and for which no claim was ever presented until after the death of the commissioner of city works who held the office at the time of relator's discharge. The present commissioner, John P. Adams, took the office, February, 1888; and the relator, instead of offering his services or commencing suit, waits three years, and when he makes application is reinstated. Such conduct deprives his claim of all consideration in equity, and was a snare that cannot be tolerated. Any person who sleeps upon his right so long must be held to some acquiescence in the conduct of the opposing party. It was held by Judge DANFORTH that a suit for *mandamus* might be denied, in the discretion of the court, when the delay in moving is unreasonable, although it falls short of the time given for commencing actions. If he had applied for a *mandamus* even as late as February 1, 1888, he would have undoubtedly been reinstated, as was done by Mr. Adams as soon as his attention was called to the subject, and thus the city would have had three years' services for which he would have been paid. It is to be fairly inferred that he had a better job, and preferred to lie by and mulct the city for services never rendered. It does not appear that the foreman to whom the relator gave notice of his preference could either employ or remove men employed as was the plaintiff at the time of his alleged discharge. Under such a state of facts, he was not removed at all, but failed to appear for duty or to claim his pay, and thus acquiesced in the notice given him by the foreman. Short, if, indeed, such notice was ever given. It was plainly his duty, if he claimed the veteran's privilege, to go at once to the head of the department, and ascertain the foreman's powers and make his claim. If upon no other ground, relator's motion for *mandamus* ought to have been denied as a matter of discretion. Order reversed, with costs and disbursements.

BARNARD, P. J. The relator is an honorably discharged Union soldier. In September, 1886, he was appointed as a skilled laborer in the department of city works of the city of Brooklyn. In December, 1887, he was discharged from the employment without a hearing. This was an illegal discharge, and in May, 1891, he was reappointed. The relator insisted on reinstatement. Such reinstatement was made at once, and the relator then reported for duty, and was employed under his reinstatement, and has since received his pay,

as a reinstated laborer, at the old rate of compensation for the employment. Nothing further can be accomplished by the writ of *mandamus*. There was no judgment which removed the relator from office, such as existed in the case of *People* v. *Commissioners of Fire, etc.*, 105 N. Y. 674, 12 N. E. Rep. 179. A denial of a writ of *mandamus* in this case will not take away a claim which relator has for back pay between the dates of the discharge and the reinstatement. It seems by the authorities of *Terhune* v. *City of New York*, 88 N. Y. 247, no action could be maintained for the back pay, even if there was a judgment of reinstatement. See, also, *McVeany* v. *Mayor*, 80 N. Y. 185. The judgment should be reversed, and the motion denied, with $10 costs and disbursements. See, also, *Higgins* v. *Mayor, etc.*, (N. Y. App.) 30 N. E. Rep. 44, (not yet officially reported.)