(Licking County, O., Common Pleas.)
January, 1898.

STATE ex rel. HENRY v. CITY OF NEWARK.

A member of the board of health can not be appointed by the board sanitary policeman and hold both positions at the same time. Such appointment is illegal and void, and the party is not entitled to compensation for his services as such sanitary policeman.

JONES, J.

This case of the State of Ohio ex rel. Miller Henry v. City of Newark, is submitted to the court upon a demurrer to the answer.

This is a suit brought by Miller Henry, alleging that he was appointed, under sec. 2115, Rev. Stat., sanitary policeman by

[COPYRIGHT, 1899, BY CARL G. JAHN.]

the board of health, and that the board fixed his salary at fifty dollars; that his salary for December has not been paid; that the city council refuses to pay it, although the board of health has certified it as a part of its expenses to the council.

There was a demurrer filed to the petition, which was overruled by the court. An answer has been filed by the city, setting up that Henry was a member of the board of health at the time he was appointed in May, and was a member of the board of health during all the time that he served as sanitary policeman; at least up to and including this month of December for which he sued.

This is a suit in mandamus to compel the council to allow this salary.

There are two questions presented in the case upon this demurrer.

First—Was the appointment legal, or void?

Second—Is he as a de facto officer, having performed the services, entitled to the salary?

The first question is: Was the appointment void? It is claimed that Henry, being a member of the board of health, could not, by the board so constituted, be appointed legally, on the ground of public policy. On the other hand, it is claimed that there is no statute against it, and that the whole matter is left in the hands of the board of health; that the offices of member of the board and sanitary policeman are not incompatible, and even if they were, that Miller Henry, having performed the services, was a de facto officer and is entitled to the compensation. It is also claimed, if the offices are incompatible, that from the fact of his accepting the office of sanitary policeman the presumption would be that he had abandoned the office of member of the board of health.

Now, upon the question of whether these offices are incompatible it is proper to examine the statute upon this subject, as to the appointment by the board of health of a sanitary policeman.

Section 2115, Rev. Stat., provides: "The board shall appoint a health officer, who shall furnish his name and address and such other information as may be required by the state board of health; and shall appoint a clerk, and may appoint as many ward or district physicians as it may deem necessary for the care of the sick, poor and persons under quarantine surveillance, and may provide for such quarantined persons necessary attendants, nurses, medicine and support until convalescent. The board shall have exclusive control of their appointees, and define their duties and fix their salaries; and all such appointees shall serve during the pleasure of the board."

Section 2131, Rev. Stat., provides: "The board of health shall have power to appoint as many persons for sanitary duty as in its opinion the public health and

sanitary condition of the corporation may require; and such persons shall have general police powers, be known as the sanitary police, perform such duties for the promotion of the public health and such other duties as the board of health may direct, and shall serve during the pleasure of the board."

Section 2132, Rev. Stat., provides: "When, in the opinion of the board of health, the services of a member of the sanitary police are no longer required, he shall, on recommendation of the board of health, be returned to duty as a regular policeman or be dismissed, as the mayor, or, in cities of the first and second grades of the first class and cities of the first grade of the second class, the police commissioners may direct."

Now, it will be observed that the board of health is to appoint this special policeman. His salary is to be fixed by the board. The duration of his office is subject to the decision of the board. He is to obey the board, and to be under their control; entirely so.

It is not necessary for me to argue about the incompatibility of these two offices, or the right of the board to appoint a member as sanitary policeman. The supreme court has settled that, in the case of State ex rel. v. Taylor, 12 Ohio St., 130. The syllabus is as follows: "Where a member of the board of directors of a county infirmary was, by said board, appointed to the office of superintendent of the county infirmary, he still continuing to hold the office of director: Held, that the duties of the two offices are incompatible, and cannot be legally held by the same person at the same time; and such appointment was, therefore, illegal and void."

That is exactly the same kind of a case as this. There is no difference. The board of infirmary directors are authorized to appoint a superintendent. He is to hold his office during their pleasure. He is to receive such salary as they may fix. The duration of his office may be terminated at their pleasure; and the court holds that the holding of those two offices is incompatible and the appointment of a member is void. Of course, this was a case in quo warranto, and it is fully argued upon that basis. Another argument which the supreme court seems to indorse is that where a statute provides that a board shall appoint somebody to an office, by the word "appoint" is meant some other person, and not themselves, and that they have not the power to appoint one of their own number.

Now, it is argued that the presumption is that he has abandoned this office of a member of the board, since he is holding the office of sanitary policeman.

There are two objections to that. One is that this answer says that he held the office of a member of the board of health at the time he was appointed and ever since, and during the month of December that he sues to recover his salary for in this case. There is nothing that appears anywhere to show that he did not. So that, until the averments of the answer are disputed, it stands that he still held the office of member of the board of health, or did at that time. But there is no such presumption.

In the case of State ex rel. v. Kearns et al., 47 Ohio St., 566, it is held, in the fifth paragraph of the syllabus:

"The appointment by a city council of a member thereof to an office which the statute makes a member of council ineligible to fill, and his acceptance thereof, do not work an abandonment of his office as councilman. The appointment to the second office is absolutely void."

In discussing this matter, Judge Spear says: "By sec. 1717, Rev. Stat., neither Tibbets nor Thomas, while a member of council, was eligible to the office to which he had been thus appointed. Not being eligible, he could not become such officer, and his attempted appointment was a nullity. It could not, therefore, in law have any effect whatever upon the office which he did hold. The acceptance and entering upon the duties of a member of the decennial board, by Tibbetts (being appointed to the decennial board by the council), might be evidence tending to show intent ot abandon the office of councilman, but standing alone does not establish it. There was no abandonment on the part of either of these men."

So that this appointment of Miller Henry must be held to have been illegal and void.

But it is alleged in the petition, and it is not disputed in the answer, that he performed the duties of sanitary policeman during this month of December, and it is claimed that he was a de facto officer, and that, having performed these duties, notwithstanding the fact that he had no title, he is entitled to the salary.

The only case I am able to find in Ohio upon this subject is in the case of State ex rel. Croni v. Eshelby, 2 Ohio C. C. Rep.,468. It is upon a subject very closely allied to this. The syllabi are as follows:

"An officer, to be entitled to the salary of an office, must have qualified thereto in the manner provided by law.

"Where a municipal corporation has paid the salary of an office to a de facto officer, it will not be required to pay the salary a second time to a de jure officer who has been excluded therefrom, pending litigation as to the title to the office."

This was a suit brought by a man who had been elected to an office, but who had never qualified by giving bond, etc. Judge Swing, in the latter part of the decision, refers to a Michigan case, a Kansas case and several New York cases, and says: "It seems to us to be the better doctrine, and we understand it to be a well settled principle, that the acts of a

de facto officer are, in so far as the public is concerned, good, and must be recognized and treated as legal by the public. It is not the business of the public to run about and see whether or not this person or that is entitled to an office, or to wait to see whether the courts will give it to this man, or that. We go on the theory that the public is more interested than the individual, and its interests are first to be consulted. The public has the right to be first looked after, and the individual interest must be subordinated.

"Of course, under our law, and it would seem reasonable, a de jure officer would have the right to recover from a de facto officer whatever salary the de facto officer has collected which should have been paid to the de jure officer, and we think that is the person and there is the place he should pursue his remedy."

In 68 N. Y., 274, the syllabi are as follows: "Disbursing officers charged with the duty of paying official salaries have, in the discharge of that duty, a right to rely upon the apparent title of an officer de facto, and to treat him as an officer de jure without inquiring whether another has the better right.

"On the thirty-first of December, 1872, plaintiff, who was the assistant clerk of the sixth district court of the city of New York, was unlawfully excluded from that office by K., who, claiming under an appointment of a justice of that court, entered upon and continued to occupy the office until March 1, 184, when, by virtue of a judgment of ouster in a action of quo warranto, plaintiff again came into possession. The salary of the office was by statute required to be paid by the comptroller of the city in monthly installments. It was paid to K. from the time of his intrusion to December 1, 1873 (K. being the ousted man). Plaintiff during the time he was excluded was ready to perform the duties of the office, and proffered his services to the clerk, which were refused. In an action to recover the salary: Held, that plaintiff was not entitled to recover the salary for the period during which it was paid to K.; that defendant was in no way a party to the usurpation or responsible for the unlawful exercise of the power of appointment by the justice; that such appointment, although unauthorized, when joined with the possession of the office, constituted K. an officer de facto; that, while as an officer de facto only he was not entitled to the salary, and could not have maintained an action to recover it, yet payment to him while in possession was a good defense, the comptroller being justified in acting upon the apparent title; and that plaintiff's remedy was by action against the usurper. But; Held, that plaintiff was entitled to recover the unpaid salary, he having the right to the services of K. as having been rendered for him."

To the same effect is McVeany v. the Mayor, 80 N. Y., 185; and they decide in that case that after judgment of ouster and notice to the city authorities, although the de jure officer did not take possession of the office, yet, after notice to the city authorities, any payment made to the de facto officer or the person who had intruded into the office would not protect the city; but after judgment of ouster the de jure officer was entitled to pay, and the city could not make payment to the intruder.

Referring to the subject of de facto officers in 5 American & English Ency. 109, there is no case that is cited or to be found, according to that work, where a de facto officer—one simply de facto—is held to have the right to maintain an action for the recovery of the salary; but that the salary belongs to the person entitled to the office.

It is held according to these authorities that if payment is made to a party incumbent to the office, the disbursing officer is protected, because it is not his duty to hunt around and see who is the de jure officer; but that it is the right and the duty of the man who claims the office de jure to see that he occupies it, so far as payment of salary is concerned. It is held universally, so far as I have been able to find, that a de facto officer is not entitled to maintain an action for the salary.