### GRANT v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. February 9, 1906.)

MUNICIPAL CORPORATIONS—INSPECTOR OF POLICE—REMOVAL—COMPENSATION.

    Under Civil Service Law, Laws 1899, p. 807, c. 370, § 19, forbidding the comptroller of the city to pay any compensation to any officer in classified service unless an estimate, pay roll or account for such compensation shall bear the certificate of the municipal civil service commission that the persons named have been appointed in pursuance of law, where an inspector of police was removed from office while the charter of a city allowed 15 inspectors, and enough were appointed to fill all vacancies, and the salary allowed by law was paid to them in accordance with the

provision cited, and the removal of the inspector was afterwards adjudged to be unlawful, he was not entitled to recover from the city the salary for the time during which all the vacancies were filled, though the city could·not show which person was appointed to fill the vacancy caused by his removal.

Houghton, J., dissenting.

Appeal from Trial Term, New York County.

Action by Donald Grant against the city of New York. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Theodore Connoly, for appellant.

William M. K. Olcott, for respondent.

INGRAHAM, J. The plaintiff was appointed an inspector of police of the city of New York on the 14th day of February, 1898; the salary attached to that position being $3,500 per year. He continued to act as such inspector, and received the salary therefor, until the 4th day of February, 1903, when, after a trial before the commissioner of police, he was dismissed from the force. At that time the charter allowed the appointment of 15 inspectors of police, and from the time that the plaintiff was removed down to the 23d day of June, 1903, there was at all times at least one vacancy in the position of inspector. On the 23d day of June, 1903, assuming that plaintiff and Cross had been dismissed, there existed three vacancies, and on that day three inspectors were appointed, thus making the full number of inspectors allowed by law. That continued down to the 22d day of April, 1904, when the plaintiff was reinstated by this court as an inspector of police. Subsequently Cross was also reinstated. After the plaintiff and Cross were reinstated, it was determined by the court at Special Term that the appointment of two of the three inspectors on the 24th day of June, 1903, was illegal. People ex rel. Albertson v. McAdoo, 46 Misc. Rep. 517, 92 N. Y. Supp. 1004. After the defendant was reinstated, the city paid him his salary while there was a vacancy in the office of inspector, but declined to pay him for the period during which there was actually 15 inspectors performing the duties of that office and receiving the salary allowed therefor, and it is to recover the salary for this period that this action is brought. The court found that between the time that the plaintiff was dismissed and reinstated to the office of inspector he performed no services as an inspector of police, and that the inspector duly appointed in his place actually performed the duties and received the compensation therefor. The court allowed a recovery upon the ground that the city was unable clearly to establish which of the three inspectors appointed on the 23d day of June, 1903, was appointed in the place of the plaintiff.

At the time of the appointment of these three inspectors the situation was as follows: There was one vacancy caused by the retirement of an inspector; there was one vacancy caused by the dismissal of the plaintiff, and one caused by the dismissal of Inspector Cross. And it was to fill these three vacancies that the three inspectors were appointed on the 23d day of June, 1903. The three appointed to fill these

vacancies were: Wiegand, who was a veteran, and under the provisions of the Constitution and civil service law was entitled to a preference in appointment. Thus it is quite clear that he was entitled to the legal vacancy caused by the retirement of Inspector Clayton. Of the two other appointments, Baldwin and Albertson, it would seem that Baldwin was the first to qualify, and it is claimed by the defendant that he thereby took the position of the plaintiff, who had been dismissed prior to the dismissal of Inspector Cross. However, it is quite clear that Baldwin and Albertson took the places of the plaintiff and Cross. The court found that the defendant had failed to establish to which of the two officers who were appointed on June 23, 1903, the salary sought to be recovered in this action was paid; that to maintain this defense it was incumbent upon the defendant here to establish affirmatively who the defacto officer was—who the usurper was—and the particular de facto officer to whom was paid the salary which the plaintiff seeks to recover; and as defendant had failed in this respect, awarded the plaintiff judgment.

It was said by Judge Vann, in Martin v. City of New York, 176 N. Y. 371, 68 N. E. 640:

"It is well settled in this state that 'payment to a de facto public officer of the salary of the office, made while he is in possession, is a good defense to an action brought by the de jure officer to recover the same salary after he has acquired or regained possession; and that the remedy of the latter is by action against the former." Dolan v. Mayor, etc., of N. Y., 68 N. Y. 274, 280, 281, 23 Am. Rep. 168; McVeany v. Mayor, etc., of N. Y., 80 N. Y. 185, 36 Am. Rep. 600; Terhune v. Mayor, etc., of N. Y., 88 N. Y. 247; Demarest v. Mayor, etc., of N. Y., 147 N. Y. 208, 41 N. E. 405. These decisions rest upon the principle that the public cannot be compelled to pay twice for the same services; and that the officer charged with the duty of paying salaries is not required to go behind the commission or the certificate of election and, at his peril, decide difficult questions of fact or law, but may make payment to the person who occupies the office and performs its duties."

The reason of the rule is not that the officer can recover his salary from the de facto officer, but because the city, when it has once paid for the services to an officer who was appointed by the appointing power and properly certified as regularly appointed and entitled to the salary, cannot be required to pay for the same services to an officer who did not perform them. The city of New York was required by law to pay for 15 inspectors of police a salary of $3,500 per year each. The appointment of these inspectors was vested by law in the police commissioner. Fifteen inspectors of police were in office performing the duties of their office, appointed by the appointing officer and certified to by the civil service commissioners as the proper persons to whom the city should pay for the services rendered. Under the provisions of section 19 of the civil service law (Laws 1899, p. 807, c. 370) the comptroller was forbidden "to pay any salary or compensation to any officer, clerk or other person in the classified service of the state or of such city or civil division thereof, unless an estimate, pay roll or account for such salary or compensation, containing the names of the persons to be paid, shall bear the certificate of the state civil service commission, or in case of the service of a city, the certificate of the municipal civil service commission of such city, that the persons named in such estimate, pay

roll or account have been appointed or employed or promoted in pursuance of law and of the rules made in pursuance of law." As the principle is established that the city should not be again compelled to pay for the services that had been paid for the one who actually performed them, in place of the de jure officer who was entitled to perform them, it seems to me that the payment to the officer whose appointment was valid on its face and who performed the services was a bar to the maintenance of an action by the officer who performed no services, but who was subsequently adjudged entitled to the office. The fact that the plaintiff cannot make up his mind as to which of the inspectors appointed on the 23d day of June, 1903, was appointed in his place does not prevent the city from proving that it was paid to the officer who was appointed in the place of the plaintiff for the services that the plaintiff was required by law to perform if he had been so allowed. It certainly would not have been an answer to this defense to prove that the de facto officer who performed the services and received the salary was insolvent and unable to respond to a judgment of the de jure officer who seeks to recover the salary. If it appeared that plaintiff will be unable to recover any salary for this period during which he performed no services as a police officer, it would be no answer to the position taken by the city that it has actually paid for the services for which the plaintiff now seeks to recover. The comptroller acted as he had a right to act, upon the pay roll certified to by the municipal civil service commissioners, that the three inspectors appointed on the 23d day of June, 1903, had been appointed in pursuance of law and rules made in pursuance of law, as provided for by section 19 of the civil service act (chapter 370, p. 807, Laws 1899). And having paid the salary to the persons thus designated as having been duly appointed as provided by law, the city is not liable to any person because it subsequently appears that the person who had not performed the services had been improperly removed, and the appointment of the de facto officer who had performed the services and received the salary was unauthorized.

It follows, therefore, that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except HOUGHTON, J., who dissents.